FILED

2015 Sep-04  PM 01:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| ALLEN PEARL and RACHEL PEARL, | ) | |
| as parents and next friends of | ) | |
| BRODIE A. PEARL, a minor; | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 7:12-cv-2850-TMP |
| | ) | |
| MAD ENGINE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter is before the court on defendant's motion for summary judgment. (Doc. 36).   The motion is supported by memoranda and exhibits, and the plaintiffs have filed a response.   The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c).

## I.   SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The party asking for summary judgment "always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting former Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential

2

to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The substantive law will identify which facts are material and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  His guide is the same standard necessary to direct a verdict:   "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983).  However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249 (citations omitted); accord Spence v.

3

Zimmerman, 873 F.2d 256 (11th Cir. 1989).   Furthermore, the court must "view the

evidence presented through the prism of the substantive evidentiary burden," so

there must be sufficient evidence on which the jury could reasonably find for the

plaintiff.   Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849

F.2d 570, 575 (11th Cir. 1988).   Nevertheless, credibility determinations, the

weighing of evidence, and the drawing of inferences from the facts are the function

of the jury, and therefore the evidence of the non-movant is to be believed and all

justifiable inferences are to be drawn in his favor.   Anderson, 477 U.S. at 255.   The

non-movant need not be given the benefit of every inference but only of every

reasonable inference.   Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th

Cir. 1988).

## II.   FACTS

Applying these standards to the evidence before the court, the following facts

are accepted as undisputed or as viewed favorably to the non-moving plaintiffs.[1]

On April 12, 2012, at about 8:30 a.m., Brodie Pearl, then age 5, was seriously injured

when the front of the "Amazing Spiderman" t-shirt he was wearing caught fire.   The

---

[1]   Allen and Rachel Pearl have asserted various claims on behalf of their minor son, Brodie, and have alleged claims for negligent infliction of emotional distress on behalf of themselves.

shirt was manufactured and sold[2] by defendant Mad Engine, Inc.   Brodie's shirt ignited when he was in the bathroom of his home, warming himself near an electric coil wall heater.

Brodie had awakened before his mother and had gone to the bathroom.   He was wearing his "Amazing Spiderman" t-shirt, pajama pants, and underpants. After washing and drying his hands, he stepped near the heater to warm himself, first his back, then his front.   The shirt ignited when Brodie turned to face the heater. Brodie was alone in the bathroom at the time; his father was at work and his mother and sisters were asleep in the nearby bedroom.   His mother heard Brodie yelling and saw him in the hallway, the front of his shirt engulfed in flames.   His mother put him into the bathtub and doused the flames with water.   Brodie was severely burned, and his mother's hands also were burned when she tried to put out the fire. When Brodie first talked to his mother about the fire about three weeks later, he said he was standing "maybe a pretty good ways from the heater" when the shirt caught fire.   In deposition, he drew marks on photographs of the bathroom which indicate that he was standing one or two feet from the heater.   His testimony is not clear as to

---

[2]   To be clear, defendant Mad Engine purchased the "blank" t-shirt as part of a bulk purchase from a t-shirt manufacturer.   Mad Engine then screen printed the "Amazing Spiderman" design onto the front of the shirt as part of a large lot of approximately 14,000 such shirts sold to Walmart in 2006.

whether he may have moved closer to the heater when he turned toward it to warm the front of his body, but he denies ever being closer than several inches away.

Brodie's father, Allen, testified that he is familiar with the electric coil heater involved.   Based on his experience with it, if one got closer than one foot from the heater, the heat would be so uncomfortable it would cause a person move away from it.   Mad Engine has offered the undisputed testimony of John Worsham that he tested the heat produced by the heater at various distances, using a thermocouple. At one foot from the heater set on high, the measured temperature was 90.9 degrees Fahrenheit.   At six inches, the measured temperature was 122.7 degrees.   When the thermocouple was attached to a black t-shirt similar to Brodie's, the measured temperature at one foot from the heater was 126.5 degrees, and at six inches, it was 271.6 degrees.[3]

---

[3]   Although no party offered evidence regarding the ignition temperature of a 100% cotton t-shirt, it appears to be beyond dispute that it exceeds 300 degrees Fahrenheit.   First, defendant offered evidence that these screen printed t-shirts are cured in ovens at a temperature of 330 degrees.   Also, various sources indicate even significantly higher ignition temperatures.   For example, one scientific study indicated that a 100% cotton Jersey T-shirt exposed to radiant heat ignites at 305 degrees Celsius (581 degrees Fahrenheit).   W. Wulff, et al, "Ignition of Fabrics Under Radiative Heating," Combustion Science and Technology, Vol. 6, pp. 321-334 (1973), reported at http://arcadvisor.com/faq/ignition-melting-characteristics-fabrics-textiles (September 3, 2015).   No evidence was offer with regard to the flammability characteristics of screen-printing ink.   Under FRE 201, the court may take judicial notice that the approximate ignition temperature of a plain 100% cotton t-shirt exposed to radiant heat exceeds 500 degrees Fahrenheit because it cannot be reasonably disputed based on these sources whose accuracy cannot be reasonably disputed.   The court takes no judicial notice concerning the ignition temperature of screen-printed cotton t-shirts.

The shirt was screen printed in 2006 by Mad Engine and was made of 100% cotton.   The front of the shirt was decorated with a screen-printed image of Spiderman that covered most of the front of the shirt from the neck to about the waist.   The normal screen-printing process involved using a machine to force inks into the cotton fibers of the shirt.   Then the shirt with the printed design would be cured by placing it in an oven at 330 degrees Fahrenheit.

The shirt had been purchased by Brodie's parents at a Walmart store near their home about a month before he was injured in 2012.   He had worn the shirt five or six times before the fire, both outdoors and to sleep in, and it had been laundered and dried in an electric clothes dryer six or seven times.   The only standard relating to flammability of clothing fabrics is set forth pursuant to the Flammable Fabrics Act at 16 C.F.R. § 1610.[4]   The shirt fabric exceeded that minimum standard.

On August 3, 2012, Brodie's parents brought this action on his behalf by filing a complaint in the Circuit Court of Marion County, Alabama.   On August 30, 2012, the case was removed to this court on the basis of diversity jurisdiction.   Brodie alleges that he suffered third-degree burns over 18 percent of his body as a result of the shirt bursting into flame.   He asserts that Mad Engine is liable for his injuries on

---

[4]      Standards also exist for childrens' sleepwear, but plaintiff does not contend that the shirt was governed by the stricter sleepwear standard.

the basis of state-law negligence and wantonness, the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), a failure to warn, breach of implied warranty and a warranty of fitness for a particular purpose, and negligent infliction of emotional distress.   The complaint seeks compensation for Brodie's medical costs, pain, suffering, and loss of enjoyment of life, damages for Brodie's mother's injuries, and punitive damages.

In support of his claims, the plaintiffs hired Gary Coggins as an expert witness to testify as to the cause and origin of the fire, and the defendant has moved to exclude Coggins' testimony.   As set forth in the court's order granting, in part, the motion, Coggins will be allowed to testify that the fire originated on the front of the shirt, but his testimony as to the cause of the fire is limited to his finding that the tests of the remnants of the shirt fabric did not indicate the presence of any ignitable liquids.   (Doc. 48).

### III.   DISCUSSION

Although the plaintiffs assert multiple causes of action, this case ultimately is a products liability action.   The plaintiffs assert that the shirt manufactured by Mad

Engine was defective in that it burst into flames while Brodie was "a reasonably safe distance" from a wall heater.[5]

A.   AEMLD

In order to survive Mad Engine's motion for summary judgment on the AEMLD claim, plaintiff must offer substantial evidence of each element of a *prima facie* case.   Under Alabama's judicially created products liability doctrine, the plaintiff must show: (1) that the product was unreasonably dangerous when it left the defendant's control, (2) that it was substantially unaltered when the plaintiff used it, and (3) that it proximately caused the plaintiff's injuries.   Caudle v. Patridge, 566 So. 2d 244, 247 (Ala. 1990).   The only element placed in dispute by the motion for summary judgment is whether Brodie can prove that the shirt was unreasonably dangerous and defective.[6]   A product is deemed "defective" under the AEMLD

---

[5]        Brodie's testimony about how close he stood to the wall heater is not entirely consistent, as might be expected from a five-year-old recalling a traumatic event.  Even so, establishing his distance from the heater, or the temperatures generated by the heater, are not necessary to the disposition of the instant motion.  The court makes no determination regarding Brodie's credibility; rather the court accepts as true his allegation that he was a reasonably safe distance from the heater.  There is no evidence that the t-shirt touched the radiant coils of the heater, as Brodie consistently said he was at lease several inches away from the heater.

[6]        The defendant does not seek summary adjudication on the basis that the plaintiffs have failed to show that the t-shirt was in the same or similar condition when it ignited in 2012 as when it was manufactured by Mad Engine in 2006, although that issue is raised in the reply brief. The evidence provided does not make clear whether the shirt was kept by Mad Engine during those intervening years, or whether it was in the possession of Walmart or some intermediary.  A new issue cannot be raised for the first time in a reply brief the non-movant has no opportunity to

when it is "unreasonably dangerous," that is, not fit for its intended purpose.   Goree v. Winnebago Industries, Inc., 958 F.2d 1537, 1541 (11th Cir. 1992), quoting Casrell v. Altec Industries, 335 So. 2d 128, 133 (Ala. 1976).   While expert testimony is not always required in order for a plaintiff to prove that the product at issue is defective, Alabama courts have noted that the testimony of an expert, which allows a lay jury to infer that a product was defective, is "ordinarily" required in an AEMLD case. Verchot v. General Motors Corp., 812 So. 2d 296, 303 (Ala. 2001).

In this case, the plaintiffs have offered expert testimony, through Coggins, as to the origin of the fire, but Coggins' testimony (as limited by the court order) is not sufficient evidence from which a reasonable juror could infer that the shirt manufactured by Mad Engine was unreasonably dangerous or defective.   The Alabama Supreme Court has made clear that proof of an accident and injury involving the use of a product is not, alone, sufficient to establish fault under the AEMLD.   Tanksley v. Prosoft Automation, Inc., 982 So. 2d 1046, 1049-50 (Ala. 2007), quoting Townsend v. General Motors Corp., 642 So. 2d 411, 415 (Ala. 1994). Alabama's products-liability doctrine is based in fault, and thus requires the showing of a defect.   Jordan v. General Motors Corp., 581 So. 2d 835 (Ala. 1991).   The doctrine of *res ipsa loquitur* does not apply in an Alabama products liability action.

answer.

10

Hughes v. Stryker Sales Corp., 2010 WL 1961051 (S.D. Ala. May 13, 2010).

Similarly, "the failure of a product does not presuppose the existence of a defect."

Townsend, 642 So. 2d at 4115.

A manufacturer has a duty to design products that are "reasonably safe" for the intended purpose; but the manufacturer is not an insurer against all harm, and is not required to produce a product that can never cause an injury.   Casrell v. Altec Ind., Inc., 335 So. 2d 128 (Ala. 1976).   The court has found no case involving Alabama's AEMLD and the flammability of clothing.   Even so, clothing is not expected to be fire-proof, and the fact that a shirt burned is not, alone, proof that the shirt was unreasonably dangerous.   The defendant cites a case applying New Jersey law in which a bathrobe burst into flames "like an explosion," injuring the plaintiff in that case, as she attempted to light a cigarette.   The fact that the robe burst into flame, absent expert testimony that the robe was unusually flammable, was deemed insufficient to prove a defect.   Toms v. J.C. Penney Co., 2007 WL 2893052 (D.N.J. 2007).

Not only have the plaintiffs failed to demonstrate a defect in the shirt, but the defendant has offered undisputed expert testimony to demonstrate that the shirt fabric met federal flammability standards for clothing fabrics.   The plaintiffs ask the jurors to *assume*, because the fire began where the design was placed on the front

of the shirt, that the design on the front of the shirt made the shirt more flammable that ordinary cotton t-shirts, thus making the shirt defective and unreasonably dangerous.   But plaintiffs have failed to offer factual *evidence* from which a reasonable jury could *infer* that the shirt was in a defective condition.   There is simply no evidence as to what caused the shirt to ignite, and it is undisputed that a cotton t-shirt will ignite under certain conditions, even if not defective.[7]   It is clear the plaintiffs want the jury to believe that the screen-printed design – the ink or some unnamed chemical used in the design – was unreasonably flammable.   However, the plaintiffs have failed to provide any evidence relating to the chemical makeup of the design or the screen-printing ink.   There is no substantial evidentiary basis for inferring an unreasonably dangerous condition in the design.

Plaintiffs attempt to overcome this omission by arguing that the defendant failed to provide an exemplar shirt. There were, however, no motions to compel any discovery responses relating to the production of any such shirt or any information about the chemical makeup of the shirt or the inks used.   The deposition testimony of the defendant's representative provided information about the process used and

---

[7]      To find that the plaintiffs' evidence was sufficient to demonstrate defect would result in a finding that all articles of clothing made of cotton are defective simply because they are flammable.

the inks employed in making the screen-printed designs.[8]   There is no indication

that the plaintiffs sought any evidence about the whether the ink used rendered the

fabric more flammable.   By contrast, the defendant offers undisputed evidence that

the design is "cured" onto the shirt at 330 degrees Fahrenheit, supporting the

inference that the ink would not ignite at lower temperatures.   The curing

temperature of the ink was substantially higher than the temperature the heater

produced, even measured to within 6 inches of the heat source.

   Because the plaintiffs have failed to demonstrate an essential element of a

*prima facie* case under the AEMLD – that the shirt was defective and unreasonably

dangerous – the defendant's motion for summary judgment on this AEMLD claim is

due to be granted.

### B.   Failure to Warn

   The defendant points out that, under Alabama law, the lack of a defect or an

unreasonably dangerous condition absolves a manufacture of a duty to warn.   See,

*e.g.*, Donnelly v. Club Car, Inc., 724 So. 2d 25, 28 (Ala. Civ. App. 1998) (holding

that if a product is not dangerous when put to its intended use, there is no duty to

warn).   As in Donnelly, the plaintiffs here have failed to present "contrary expert

---

[8]      Defendant's representative testified that the ink used to screen print the shirt most likely was the brand Wilflex, purchased from two identified sources.   There is no evidence offered by plaintiffs about the flammability characteristics of this ink.   Indeed, plaintiffs' only expert, Coggins, expressly stated he knew nothing about the characteristics of screen-print ink.

evidence that raises a genuine issue of material fact concerning the existence of a defect." The absence of evidence of a defect is fatal to the claim that the manufacturer failed to give a warning. Accordingly, the motion for summary judgment on the failure to warn claim is due to be granted.

### C.   Breach of Warranty

In order to defeat a motion for summary judgment challenging a claim for breach of implied warranty of merchantability, a plaintiff must demonstrate that a genuine issue of material fact exists as to: (1) the existence of an implied warranty, (2) a breach of the warranty, and (3) damages that were proximately caused by the breach. Barrington Corp. v. Patrick Lumber Co., Inc., 447 So. 2d 785, 787 (Ala. Civ. App. 1984). The plaintiffs assert that the t-shirt manufactured by Mad Engine was "not merchantable or fit for the ordinary purposes for which it is used." (Doc. 42, p. 24).[9] The defendant seeks adjudication of the implied warranty claims

_____

[9] The plaintiffs' complaint sets out two claims for breach of warranty (Counts Six and Seven) without identifying the statutory basis. The claims appear to arise under the Uniform Commercial Code, as codified in Alabama at Ala. Code § 7-2-314(2)(c) (breach of an implied warranty of merchantability in that the goods are "fit for the ordinary purposes for which such goods are used") and § 7-2-315 (breach of an implied warranty of fitness for a particular purpose). The defendant's motion does not separately challenge the "particular purpose" warranty; however, there are no facts alleged in the complaint or presented in the evidence provided to the court that would support a claim under Section 315, which requires some "reliance on the seller's judgment," at the time when a purchase is made, that the product fits a particular need or use of the buyer. See, e.g., Caldwell v. Brown Serv. Funeral Home, 345 So. 2d 1341 (Ala. 1977). There is no evidence here that plaintiffs relied upon Mad Engine's judgment for the fitness of the t-shirt as sleepwear or daywear.

on the ground that the plaintiffs have failed to demonstrate that the shirt was not fit for the ordinary purpose of being worn as clothing.[10]   Alabama law has defined clothing to be "fit for the ordinary purposes" when it can withstand "normal consumer use."   Martin v. Dinmark, 531 So. 2d 1234, 1235 (Ala. Civ. App. 1988). Although the complaint largely restates the AEMLD claim as a warranty claim, the two are not interchangeable.   A claim for breach of an implied warranty of merchantability "is separate and distinct from an AEMLD claim and is viable to redress an injury caused by an unreasonably dangerous product."   Spain v. Brown & Williamson Tobacco Corp., 872 So.2d 101, 111 (Ala. 2003).   As discussed in Houston v. Bayer Healthcare Pharmaceuticals, Inc., 16 F. Supp. 3d 1341 (N.D. Ala. 2014), however, Alabama courts have held that the commercial code creates only commercial warranties, not safety warranties.[11]   Moreover, the warranty claim does not apply to an isolated case of product failure.

   In Collins v. Novartis Pharmaceuticals Corp., a federal district court applied Alabama law regarding a warranty of merchantability and noted:

---

[10]    The defendant does not challenge liability on the basis that, as a manufacturer, it is not a "seller" of goods under Alabama Code   § 7-2-314(1).

[11]    The court recognized, however, that the Alabama courts have not been entirely consistent, and have acknowledged claims for breach of the implied warranty where the product is a food not safe for consumption.   16 F. Supp. 3d at 1346-47.

In 1984, the Eleventh Circuit Court of Appeals certified a question of Alabama law to the Alabama Supreme Court asking in pertinent part: "Does [state law] impose liability under a breach of implied warranty of merchantability on the manufacturer of an over the counter drug for injuries sustained from an uncommon reaction?" Griggs v. Combe, Inc., 456 So.2d 790 (Ala.1984). The Alabama court noted in Griggs that the record established that there had been no prior evidence that the product, a topical analgesic, induced Stevens–Johnson syndrome from which the plaintiff had suffered after use.   Quoting and relying upon a survey of law from other jurisdictions presented in a UCC treatise the, Supreme Court wrote that:

> We agree with the above authorities that a product must adversely affect at least some significant number of persons before a question of 'merchantability' arises.

Griggs, 456 So. 2d at 793. The Alabama court did not attempt to explain under what circumstances a "question of 'merchantability'" [would] arise[ ]" nor even what that question might be.

In 1986, two years after Griggs, the Alabama Supreme Court limited the scope of an action alleging a breach of the warranty of merchantability by explaining in Shell v. Union Oil Company, 489 So. 2d 569 (Ala.1986) that "... a manufacturer's implied warranty was limited to 'commercial fitness and suitability,' not 'the broader obligation to warrant against health hazards inherent in the use of the product....'"   Bodie, 236 F. App'x at 523 (quoting Shell, 489 So.2d at 572) (emphasis supplied in Bodie). The Shell court rejected the plaintiff's contention that because a product caused cancer, it could not be "fit" for the ordinary purpose for which the product was used because the product was inherently dangerous. The Alabama Supreme Court held instead that the UCC concerned itself only with the quality of a product by establishing whether it is fit for a particular use and not with safety standards imposing strict liability on the seller of an unreasonably dangerous product that could cause physical harm. The Shell court specifically stated that the latter question was not properly

addressed under the provisions of the UCC but rather when considering whether a given product was unreasonably dangerous, the question was to be analyzed in accord with tort law principles under the Alabama Extended Manufacturers' Liability Doctrine.

Collins v. Novartis Pharmaceuticals, Inc., 2015 WL 178157 (M.D. Ala. Jan. 14, 2015).

The evidence provided in this case does not address whether the Mad Engine t-shirt was commercially unsuitable.   In fact, the evidence offered by the defendant shows that Mad Engine had successfully sold millions of similar t-shirts without any complaint.   What the plaintiffs allege, and attempt to prove through expert testimony, is that the shirt was too highly flammable to be safe for a child to wear near a heater.   But the plaintiffs have no evidence that any Mad Engine t-shirt, other than the one purchased by them, ever caught fire. The reasoning employed in Collins, which applies Alabama law, compels the conclusion that an implied-warranty-of-merchantability claim does not apply to plaintiffs' allegations in this case.

It follows that, under Alabama law, to the extent that a warranty-of-merchantability claim exists here, it requires, as does an AEMLD claim, substantial evidence that the product at issue is "unreasonably dangerous" and that it has been shown to be unsuitable in some number of instances.   Accordingly,

the claim is subject to summary adjudication for the same reason as the AEMLD claim – the plaintiff has failed to demonstrate that the shirt was defective or unreasonably dangerous.

### D.   Negligence and Wantonness

Mad Engine asserts that a lack of evidence of defectiveness or unreasonable dangerousness also precludes plaintiffs from establishing a negligence claim. Under Alabama law, a negligence action is not merged into the AEMLD claim, and a separate action for negligence may exist for an injury caused by an allegedly defective product.   See Tillman v. R.J. Reynolds Tobacco Co., 871 So. 2d 28   (Ala. 2003); Spain v. Brown & Williamson Tobacco Corp., 872 So. 2d 101, 105-06 (Ala. 2003).   The manufacture of a defective product may be deemed negligence *per se*; however, in the absence of a defective product, a manufacturer is liable under a negligence theory only if he has breached some duty of due care in the manufacture of the product.   Atkins v. American Motors Corp., 335 So. 2d 134, 139-40 (Ala. 1976).   In response to the motion for summary judgment, plaintiffs assert that "Mad Engine breached its duty and violated the standard of care by manufacturing and applying a t-shirt design that resulted in a product that was highly flammable at the application of a moderate heat source."   As discussed in the court's analysis of the AEMLD claim, the plaintiffs have not offered any evidence that the design caused

the shirt to become "highly flammable."   Accordingly, the plaintiffs have failed to offer any evidence that a standard of care was breached in the manufacture of the shirt.

Plaintiffs also assert a claim of negligent infliction of emotional distress.   It is well settled that Alabama does not recognize a tort for damages based on emotional distress that is suffered as a result of *negligent* conduct.   Collins v. Davol, Inc., 56 F. Supp. 3d 1222, 1229 (N.D. Ala. 2014), quoting AALAR Ltd., Inc. V. Francis, 716 So. 2d 1141, 1144 (Ala. 1998).   Emotional injuries suffered as a result of *negligent* conduct are compensated as part of the remedy for the tort of negligence itself.   As plaintiffs have not been able to present substantial evidence of negligence by Mad Engine, there is no tort to remedy.    Accordingly, the claim set forth as a claim for negligent infliction of emotional distress is without basis in law and is due to be dismissed.

Evidence to support a claim of wantonness includes the additional showing that the defendant was aware that injury would likely result from the defective product, and that the defendant consciously manufactured and sold the shirt in its dangerous condition.   Rockhill-Anderson v. Deere & Co., 994 F. Supp. 2d 1224, 1246 (M.D. Ala. 2014).   There is no evidence in this case that Mad Engine "with reckless indifference," "consciously and intentionally" manufactured a shirt that

19

presented a danger as Alabama law requires.  994 F. Supp. 2d at 1246.  To the contrary, Mad Engine has shown that, in spite of selling millions of screen printed t-shirts, it has never had any other complaints regarding flammability. Accordingly, there is no evidence to support a claim of wantonness.    Thus, the motion as to the negligence and wantonness claims also is due to be granted.


## **CONCLUSION**

This is a tragic case.  One in which a small child suffered life-changing injuries in a split second.   The facts presented by the evidence viewed favorably to the plaintiffs simply fail to offer any reasonable inference that the shirt worn by Brodie was any more dangerous than any ordinary cotton shirt.   What caused it to catch fire remains a mystery, but the existence of that mystery falls heavily on the plaintiffs, who have the burden of proof in the case.   Absent some evidence from which a reasonable jury could infer a defect in the shirt, the fact that Brodie was injured while wearing it does not prove that it was unreasonably dangerous for its intended uses.

Based on the foregoing undisputed facts and legal conclusions, however, the court has no choice but to find that the motion for summary judgment filed by the defendant is due to be granted and all of plaintiffs' claims dismissed with prejudice.

A separate order will be entered in accordance with the findings set forth herein.

DONE the 4th day of September, 2015.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE